## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARLON L. WATFORD, # R-15678,      ) | |
| ) | |
| **Plaintiff,**      ) | |
| ) | |
| vs.      ) | **Case No. 17-cv-1252-MJR** |
| ) | |
| STEVEN NEWBOLD,      ) | |
| JOHN TROST,      ) | |
| DAWN GHAFTHER,      ) | |
| JANE DOE (Nurse),      ) | |
| DR. FUENTES,      ) | |
| DR. KAJA,      ) | |
| WEXFORD,      ) | |
| KIMBERLY BUTLER,      ) | |
| JACQUELINE LASHBROOK,      ) | |
| and SUSAN KIRK,      ) | |
| ) | |
| **Defendants.**      ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff, who is serving a life sentence at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff claims that some Defendants were deliberately indifferent to his serious dental condition, and others displayed deliberate indifference to a distinct serious medical condition.  This same conduct allegedly violated Plaintiff's First Amendment right to practice his religion, the RLUIPA, and the Illinois Constitution.  This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims.  *See* 28 U.S.C. § 1915A(a).  The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be

granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557.  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim.  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*.  At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed.  *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.  Further, the surviving claims are not properly joined in the same action, so one count shall be severed into a new case.

**The Complaint**

Plaintiff introduces his Complaint by noting that he is a devout practitioner of Al-Islam, under which he has a religious duty to keep himself free from all forms of oppression.  (Doc. 1, pp. 2-3).  This includes the duty to be a good custodian of his body, which is a "gift and a trust from Allah."  (Doc. 1, p. 3).

On May 23, 2016, Plaintiff had his bi-annual dental checkup with Newbold (the prison dentist).  At that time, he learned that in 2014, Newbold had diagnosed him with a cavity in one tooth – but had never disclosed this fact to Plaintiff until the May 23, 2016 visit.  (Doc. 1, pp. 3-4).  During the time between 2014 and 2016, Plaintiff had suffered unexplained pain in the affected tooth.  On May 23, 2016, Newbold purportedly put Plaintiff on the list to have a filling.

On November 3, 2016, Plaintiff was called to see Dentist Kaja to have the cavity filled; he told Kaja about the "ongoing periodic pain" in that tooth.  Kaja ordered an x-ray to be done prior to the filling.  (Doc. 1, p. 5).  After the x-ray was done, Kaja informed Plaintiff that Newbold instructed her not to fill the tooth that day.  On November 4, 2016, Plaintiff sent a request slip to Newbold asking why he could not get the filling; Newbold did not respond.  (Doc. 1, p. 6).

Plaintiff did not return for dental care until June 13, 2017, when he had his teeth cleaned. (Doc. 1, p. 7).  He told the hygienist about the cavity.  Newbold told Plaintiff that he might have an abscess, and gave him antibiotics, ibuprofen, and ordered another x-ray.

On June 30, 2017, Plaintiff had the x-ray.  On August 22, 2017, Plaintiff visited Newbold to discuss the x-ray results.  Newbold opined that a wisdom tooth can cause the pain Plaintiff had been experiencing.  (Doc. 1, p. 8).  Plaintiff responded that he did not believe he had an abscess, and needed a filling of his cavity in order to relieve the pain.  Newbold said Plaintiff had been

"added to the filling list."  *Id.*

As of the date he filed the instant Complaint (November 17, 2017), Plaintiff's cavity had not yet been filled.  (Doc. 1, pp. 12, 29).

Plaintiff alleges that Wexford Health Sources, Inc., ("Wexford") has a policy that instructs their employees (Newbold and Kaja) "to put cost over health care and to deprive Illinois prisoners . . . of needed medical and dental treatment."  (Doc. 1, p. 9).

He further alleges that Newbold, Kaja, and Wexford's failure to fill his cavity has prevented him from discharging his religious obligation to obtain care for his diseased tooth. (Doc. 1, p. 10).  Plaintiff also claims that this conduct violates RLUIPA (Religious Land Use and Institutionalized Persons Act) and Article I, sections 3 and 11 of the Illinois Constitution.  (Doc. 1, p. 11).

Plaintiff's second claim concerns his serious abdominal symptoms.  (Doc. 1, pp. 13-22). On March 18, 2015, Plaintiff began having severe stomach pains, made worse when he ate and drank.  The pain was accompanied by severe diarrhea.  Some time in the past, Plaintiff had been diagnosed with IBS (irritable bowel syndrome) and a severe infection with H. Pylori, for which he had been treated twice.  (Doc. 1, p. 15).

In the morning of March 18, Plaintiff went to the Health Care Unit and consulted the Jane Doe Nurse.  She attributed his symptoms to IBS because his stool test for H. Pylori was negative, and sent him back to his cell without seeing Dr. Trost.  (Doc. 1, p. 16; Doc. 1-1, pp. 30-31). Plaintiff does not say whether or not the nurse gave him any medication for his condition.

On March 20, 2015, Plaintiff was taken to see Dr. Fuentes and Nurse Ghafther.  He explained his symptoms, which were identical to those he experienced during his previous H. Pylori infection and his bouts with IBS.  (Doc. 1-1, p. 31).  However, Nurse Ghafther cut him off

and told him he had GERD (gastro-esophageal reflux disease).  Ghafther and Fuentes did not perform any diagnostic tests to arrive at this conclusion.  (Doc. 1, p. 17; Doc. 1-1, pp. 31-32). Plaintiff again tried to explain his IBS condition and chronic stomach inflammation, and requested a "correct diagnosis" and proper treatment.  *Id.*  Fuentes refused to perform any tests, and "prematurely terminated" the appointment.  *Id.*  Plaintiff was charged a $5.00 co-payment for the visit, which he claims was improper under state law, because he suffers from the ongoing IBS condition.

On March 29, 2015, Plaintiff consulted Dr. Trost about his continuing abdominal/intestinal symptoms.  Dr. Trost did not conduct any tests or prescribe any treatment, but "made a promise" to send Plaintiff to an outside specialist.  (Doc. 1, p. 18).  However, that visit never took place.

More than a year later, on June 16, 2016, Plaintiff consulted Nurse Kirk about his recurring symptoms of stomach pain and burning, and stomach and bowel spasms.  He also had begun to have blood in his stool.  (Doc. 1, pp. 18-19).  Plaintiff requested a referral to Dr. Trost, but this was not done.  He claims to have submitted numerous requests slips for medical treatment up to the present date, with no further response.

Plaintiff references a book entitled *A New I.B.S. Solution*, which recommends an IBS breath test, endoscopy, and a 10-day course of 2 antibiotics as appropriate treatment for his condition, and claims that Defendants' refusal to provide this treatment constitutes deliberate indifference.  (Doc. 1, p. 20).

Again, he asserts that Wexford has a cost-cutting policy which prompted Fuentes, Trost, Ghafther, Kirk, and the Jane Doe Nurse to deny him treatment.  *Id.*  Plaintiff adds that the lack of treatment violates his First Amendment rights, the RLUIPA, and the Illinois Constitution.  (Doc.

1, pp. 21-22).

Plaintiff also names Kimberly Butler and Jacqueline Lashbrook as Defendants, but does not mention them in the statement of claim, other than to assert that somebody forged then-Warden Butler's signature on a grievance.  (Doc. 1, pp. 23-24).

In addition to requesting compensatory and punitive damages, the Complaint seeks an "emergency injunctive order" directing the Defendants to give him a permanent filling, and provide specific tests and treatment for his IBS condition.  (Doc. 1, pp. 12, 24-25, 28-29).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.  Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

**Count 1:**  Eighth Amendment deliberate indifference claim against Newbold, Kaja, and Wexford, for delaying and denying dental treatment for Plaintiff's cavity since 2014;

**Count 2:**  First Amendment and RLUIPA claims against Newbold, Kaja, and Wexford, for delaying and denying dental treatment for Plaintiff's cavity since 2014;

**Count 3:**  Illinois State law claim against Newbold, Kaja, and Wexford, for violating the Illinois Constitution, Article I, sections 3 and 11, when they delayed and denied dental treatment for Plaintiff's cavity since 2014;

**Count 4:**  Eighth Amendment deliberate indifference claim against Trost, Ghafther, the Jane Doe Nurse, Fuentes, Kirk, and Wexford, for denying diagnostic testing and treatment for Plaintiff's severe stomach pain and intestinal symptoms, and failing to refer Plaintiff to a specialist for diagnosis and treatment;

**Count 5:**  First Amendment and RLUIPA claims against Trost, Ghafther, the Jane

Doe Nurse, Fuentes, Kirk, and Wexford, for denying diagnostic testing and treatment for Plaintiff's severe stomach pain and intestinal symptoms, and failing to refer Plaintiff to a specialist for diagnosis and treatment;

**Count 6:**  Illinois State law claim against Trost, Ghafther, the Jane Doe Nurse, Fuentes, Kirk, and Wexford, for violating the Illinois Constitution, Article I, sections 3 and 11, when they denied diagnostic testing, treatment, or a referral for Plaintiff's stomach and intestinal symptoms.

Counts 1 and 4 state cognizable claims and shall undergo further consideration against some of the Defendants.  Counts 2 and 5 shall be dismissed as duplicative of Counts 1 and 4, respectively.  Counts 3 and 6 shall also be dismissed.  Additionally, because Counts 1 and 4 involve different Defendants and arose from unrelated events, Count 4 shall be severed into a separate action.

At the outset, Defendants Butler and Lashbrook shall be dismissed from the action without prejudice, because Plaintiff failed to include any factual allegations against them whatsoever.  Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2).  Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him.  Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

However, because Plaintiff has requested injunctive relief, the Clerk shall be directed to add the current Warden of Menard (official capacity only) for the purpose of implementing any injunctive relief to which Plaintiff may be entitled.  *See Gonzalez v. Feinerman*, 663 F.3d 311,

315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

### Count 1 – Deliberate Indifference to Serious Dental Condition

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition.  An objectively serious condition includes an ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain.  *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  The Seventh Circuit has recognized that dental care is "one of the most important medical needs of inmates."  *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001).  *See also Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection.").

"Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain."  *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted).  *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015).  However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).  Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.  *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir.

2008).

In the instant case, Plaintiff claims that he suffered pain in his mouth due to a cavity that was diagnosed in 2014.  This diagnosis, as well as Plaintiff's ongoing pain, indicate that he had a serious condition that required professional attention.  The Complaint thus satisfies the objective component of an Eighth Amendment claim.  The remaining question is whether the Defendants acted or failed to act with deliberate indifference to a known risk of serious harm.

Dentist Newbold discovered the cavity in 2014, but did not refer Plaintiff for a filling at that time.  It is possible that the failure to order treatment between 2014 and 2016 could be considered deliberate indifference, if the cavity was serious enough to threaten Plaintiff's dental health, or if Newbold was informed of Plaintiff's complaints of pain.  The Complaint does not address those questions.  Nonetheless, once Plaintiff was placed on the waiting list for a filling in May 23, 2016, the need for treatment was obvious.  Still, he was made to wait 6 months before he was seen again, and apparently was not provided with anything to relieve his pain during that time.  At his November 3, 2016, appointment, Plaintiff told Kaja and Newbold about his tooth pain.  Despite the original plan to fill the cavity on November 3, 2016, neither Newbold or Kaja gave Plaintiff the filling.  He still has never had the cavity filled, after a further delay of more than a year, and after informing Newbold yet again, at his August 2017 visit, that he was in pain.  These factual allegations support the deliberate indifference claim against Kaja and Newbold.

However, the Complaint does not provide factual support for Plaintiff's claim against Wexford.  Wexford Health Sources, Inc., ("Wexford") is a corporation that employs Newbold, Kaja, and the other medical-provider Defendants, and provides dental care at the prison, but it cannot be held liable solely on that basis.  A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional

9

right.  *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).  *See also*

*Jackson v. Ill. Medi-Car, Inc*., 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is

treated as though it were a municipal entity in a § 1983 action).

Here, Plaintiff alleges that Wexford has a policy instructing their employees to deprive

prisoners of needed treatment in order to save money.  (Doc. 1, p. 9).  However, nothing in

Plaintiff's factual account of his dealings with Newbold or Kaja indicates that either of these

Defendants made any decision regarding his treatment as a result of Wexford's alleged policy.

He offers only his own bare assumption that Wexford's purported policy prompted Newbold and

Kaja to postpone or deny his treatment.  Wexford shall therefore be dismissed from this claim

without prejudice at this time.

**Count 1** for deliberate indifference to Plaintiff's serious dental condition shall proceed

only against Newbold and Kaja.

### Dismissal of Count 2 – First Amendment and RLUIPA Claims – Dental Issue

Plaintiff has advanced the theory that prison officials have violated his First Amendment

right to freely practice the tenets of his faith in several other lawsuits,[1] and has raised claims

under RLUIPA as well.  In the present action, the First Amendment claim in Count 2 is grounded

on the identical facts that underlie his Eighth Amendment claim for deliberate indifference to

dental needs.  Plaintiff does not allege that Newbold or Kaja singled him out or denied him

treatment based on his religious affiliation, nor does he assert that either Defendant was aware

that a denial or delay in providing Plaintiff with dental care would affect his faith-based

obligation to maintain his dental health.  In substance, Plaintiff's First Amendment claim is

---

[1] *See Watford v. Quinn*, Case No. 14-cv-571-MJR (S.D. Ill., dismissed Sept. 16, 2014, and strike assessed); *Watford v. Wooley, et al.*, Case No. 15-cv-567-SCW (S.D. Ill., filed May 14, 2015); *Watford v. Ellis, et al.*, Case No. 16-cv-582-NJR-DGW (S.D. Ill., severed from No. 15-567); *Watford v. LaFond, et al.*, Case No. 16-941-MJR (S.D. Ill., dismissed Feb. 7, 2017 for failure to comply with court orders); *Watford v. Doe, et al.*, Case No. 15-C-9540 (N.D. Ill., dismissed Oct. 11, 2017 and strike assessed).

redundant to his Eighth Amendment claim. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (claims are to be analyzed under the most explicit sources of constitutional protections; court dismissed equal protection and Eighth Amendment claims that duplicated free exercise claim) (citing *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989)).

Duplicative or redundant claims may be appropriately dismissed, when they are based on the same set of facts. In this case, Plaintiff's Eighth Amendment claim "gains nothing by attracting additional constitutional labels," *Conyers*, 416 F.3d at 586, such as the First Amendment free exercise claim. *See also Williams v. Snyder*, 150 F. App'x 549, 552-53 (7th Cir. 2005) (dismissing equal protection, access to courts, due process, and Eighth Amendment claims as duplicative of retaliation and freedom of religion claims). The remedies Plaintiff seeks – damages and injunctive relief – are equally available if he were to prevail on either a First Amendment or Eighth Amendment claim. Accordingly, the First Amendment claim in Count 2 shall be dismissed, albeit without prejudice.

Plaintiff's RLUIPA claim is more narrow in scope. RLUIPA protects institutionialized persons by prohibiting substantial burdens on their exercise of religion. 42 U.S.C. § 2000cc-5(4); § 2000cc-3(g). However, it does not provide a cause of action for money damages against state officials in their individual capacity, *see Nelson v. Miller*, 570 F.3d 868, 886-89 (7th Cir. 2009), or official capacity, *see Sossamon v. Texas*, 563 U.S. 277, 285-86 (2011); 42 U.S.C. § 2000cc-5(4). Under RLUIPA, Plaintiff is limited to seeking injunctive relief for any violation he may be able to prove. As noted above, injunctive relief may be ordered if Plaintiff prevails on his Eighth Amendment claim; therefore, the RLUIPA claim is also duplicative of Count 1.

For these reasons, **Count 2**, consisting of Plaintiff's First Amendment and RLUIPA claims based on the denial of dental treatment, shall be dismissed without prejudice.

11

**Dismissal of Count 3 – Illinois Constitutional Claims – Dental Issue**

Plaintiff invokes two sections of Article I of the Illinois Constitution in connection with the alleged denial of dental treatment.  Section 3, "Religious Freedom," states in relevant part:

> The free exercise and enjoyment of religious profession and worship, without discrimination, shall forever be guaranteed, and no person shall be denied any civil or political right, privilege or capacity, on account of his religious opinions[.]

ILL. CONST. art. I, § 3.

This portion of the Illinois constitutional claim clearly overlaps with the claims in Count 2, which shall be dismissed.  Due to the dismissal of those federal claims, the Court will not exercise supplemental jurisdiction over the state-law claim.  *See* 28 U.S.C. § 1367(c)(3); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("the usual practice is to dismiss without prejudice state supplemental claims" when the related federal claims are dismissed).

The other portion of the Illinois Constitution referenced by Plaintiff relates to his claims in Count 1 for cruel and unusual punishment.  Section 11 is entitled "Limitation of Penalties after Conviction," and provides:

> All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.   No conviction shall work corruption of blood or forfeiture of estate.  No
> person shall be transported out of the State for an offense committed within the State.

ILLINOIS CONST. art. I, § 11.

The first sentence in this section has to do with the proportionality of penalties, and has formed the basis for challenges claiming that disproportionate criminal sentences constitute cruel and unusual punishment.  *See, e.g.*, *People v. Clemons*, 2012 IL 107821, 968 N.E.2d 1046, 1057 (Ill. 2012) (case remanded for resentencing).  However, the Court was unable to locate any case where an Illinois prisoner was allowed to maintain a civil cause of action for cruel and unusual

punishment based on this (or any other) section of the Illinois Constitution.  This Court is in agreement with the reasoning of the Northern District of Illinois, which found that the Illinois Constitution "do[es] not provide an independent right to be free from cruel and unusual punishment . . . in the context of prison conditions."  *B. v. Duff*, No. 06-C-4912, 2009 WL 2147936, at *16-17 (N.D. Ill. July 17, 2009).  Instead, prison condition claims have ordinarily been brought, even in state court, under the Eighth Amendment or under applicable Illinois statutes.  *See, e.g*., *Arnett v. Snyder*, 769 N.E.2d 943 (Ill. App. 2001); *see also Ashley v. Snyder*, 739 N.E.2d 897 (Ill. App. 2000) ("Illinois law creates no more *rights* for inmates than those which are constitutionally required.") (emphasis in original).  The Complaint therefore fails to state a claim upon which relief may be granted, as to Section 11 of the Illinois Constitution.

Accordingly, **Count 3**, consisting of the "cruel and unusual punishment" claim and religious exercise claim, both based on the Illinois Constitution, shall be dismissed without prejudice.

### Count 4 – Deliberate Indifference to Serious Medical Condition

The legal standards outlined under Count 1 apply equally to Plaintiff's claim of deliberate indifference to his intestinal symptoms.  The severe stomach pain and diarrhea that Plaintiff experienced in March 2015, presented a serious condition which warranted medical attention. Plaintiff continued to have these symptoms in June 2016, and the problems had worsened to include blood in his stool.  Whether Plaintiff's symptoms were caused by IBS, a recurring H. Pylori infection, or GERD, his condition satisfies the objective component of an Eighth Amendment claim.

Turning to the subjective factor, Plaintiff alleges that after he described his symptoms to the Jane Doe Nurse on March 18, 2015, she gave him no treatment and did not allow him to see

the doctor.  That delay and failure to provide Plaintiff with anything to relief his suffering may support a deliberate indifference claim.

Two days later (on March 20, 2015), Plaintiff consulted Dr. Fuentes and Nurse Ghafther. They did not agree with Plaintiff's opinion that he was suffering from IBS or H. Pylori, which had produced identical symptoms when he was diagnosed with those ailments in the past. Instead, they concluded he had GERD, but did not conduct any tests to confirm this diagnosis. Plaintiff does not mention whether Fuentes or Ghafther provided him with any medication or treatment for his symptoms, but his statement that they "prematurely terminated" the appointment suggests that they did not.  (Doc. 1, p. 17).

Plaintiff's assertion that Fuentes "refused" to give him a "correct diagnosis" does not state an Eighth Amendment claim.  (Doc. 1, p. 17).  A difference of opinion between medical professionals concerning the treatment of an inmate will not support a claim for deliberate indifference – and neither will a difference of opinion between Plaintiff (who is not a trained physician) and his prison doctors regarding what diagnosis is "correct."  *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not take sides in disagreements about medical personnel's judgments or techniques); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).  By the same token, Plaintiff cannot dictate his treatment, such as insisting that he be given the specific tests he lists in the Complaint.  (Doc. 1, p. 20).  The Eighth Amendment does not entitle prisoners to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm."  *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Aside from Plaintiff's disagreement with the GERD diagnosis, however, the Complaint

14

suggests that Fuentes and Ghafther did not provide Plaintiff with any treatment for his symptoms, and/or delayed Plaintiff's efforts to obtain treatment.  If so, he may be able to support a deliberate indifference claim against these Defendants.  Additionally, if Fuentes or Ghafther failed to order diagnostic testing that was medically indicated for Plaintiff's symptoms, this could indicate deliberate indifference.  Count 4 may therefore proceed against Fuentes and Ghafther to further consider these matters.

Plaintiff saw Dr. Trost on March 29, 2015, 9 days after his appointment with Fuentes and Ghafther.  Based on Plaintiff's symptoms, Trost promised to send Plaintiff to an outside hospital or specialist to evaluate his digestive tract problems.  However, Plaintiff was never sent for any outside consultation.  Furthermore, Trost never ordered any tests or prescribed any treatment for Plaintiff.  Based on these facts, Plaintiff may also proceed with a deliberate indifference claim against Trost under Count 4.

Plaintiff does not describe any other encounters with medical staff at Menard until June 2016, although he states that he sent multiple request slips to be seen for his stomach/intestinal complaints.  On June 16, 2016, he told Nurse Kirk about his symptoms of pain, stomach and bowel spasms, and bloody stool, but she failed to refer him to Dr. Trost.  (Doc. 1, pp. 18-19).  Plaintiff may be able to demonstrate deliberate indifference by Kirk for failing to provide him with treatment or a referral, therefore, Count 4 may also proceed against her.

As to Wexford, Plaintiff again claims that the company has a policy that led Fuentes, Trost, Ghafther, Jane Doe, and Kirk to deny him medical treatment and testing.  (Doc. 1, p. 20).  However, he offers no factual support for this conclusory statement.  As such, he fails to state a claim against Wexford upon which relief may be granted, and Wexford shall be dismissed without prejudice from Count 4.

Finally, Plaintiff's Eighth Amendment claim in Count 4 shall not include the matter of the $5.00 co-payment which he claims was wrongly assessed for one or more of his medical visits.  An inmate's constitutional rights are not violated by the collection of a fee for prison medical or dental services.  Whether or not a statutory exemption (such as for a chronic medical condition) should apply to the co-payment rule is a question of state law, not cognizable in a § 1983 action.  *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012) ("the imposition of a modest fee for medical services, standing alone, does not violate the Constitution").

To summarize, the deliberate indifference claims in **Count 4**, as delineated above, may proceed for further consideration against the Jane Doe Nurse, Fuentes, Ghafther, Trost, and Kirk. However, Plaintiff must identify the Jane Doe Nurse by name before she can be served with notice of the claim.

### Dismissal of Count 5 – First Amendment and RLUIPA Claims – Medical Issue

Plaintiff's First Amendment claim that the Jane Doe Nurse, Fuentes, Ghafther, Trost, and Kirk caused him to violate his religious obligation to properly care for his body is based on the identical facts that support his Eighth Amendment deliberate indifference claim against these individuals.  For the reasons discussed under Count 2, the Court shall dismiss the First Amendment claim in Count 5 because it is redundant to the Eighth Amendment claim in Count 4.  *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (claims are to be analyzed under the most explicit sources of constitutional protections; court dismissed equal protection and Eighth Amendment claims that duplicated free exercise claim) (citing *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989)).

Likewise, Plaintiff's RLUIPA claim based on the denial of treatment for his intestinal issues is duplicative of the Eighth Amendment claim, and offers Plaintiff no relief that he could

not obtain by prevailing on the Eighth Amendment claim in Count 4.

**Count 5** shall therefore be dismissed without prejudice.

### Dismissal of Count 6 – Illinois Constitutional Claims – Medical Issue

The analysis of Plaintiff's Illinois Constitutional claims for failure to treat his intestinal condition is identical to that of the dental claim in Count 3. The Court will not extend supplemental jurisdiction to consider any state-constitution-based religious claim, because the related federal claim (Count 5) shall be dismissed. There is no private right of action to bring a cruel and unusual punishment claim grounded in the Illinois Constitution. **Count 6** shall also be dismissed without prejudice.

### Severance of Claims & Defendants

In addition to conducting the merits review under § 1915A, the Court must consider whether the surviving claims and parties may properly proceed in the same joint action, in consideration of Federal Rule of Civil Procedure 20. Under Rule 20(a)(2),[2] a "plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." Wright, Miller, & Kane, 7 Federal Practice & Procedure Civ. 3d § 1655 (West 2017); FED. R. CIV. P. 20(a)(2). The Seventh Circuit instructs that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(b), (g)).

---

[2] Rule 20, which governs joinder of parties in a single action, must be satisfied before the Court turns to the question of whether claims are properly joined under Rule 18. *Intercon Research Assoc's, Ltd. v. Dresser Industries, Inc.*, 696 F.2d 53, 57 (7th Cir. 1982); Wright, Miller, & Kane, 7 Federal Practice & Procedure Civil 3d § 1655 (West 2017).

The dental deliberate indifference claims in Count 1 involve Newbold and Kaja, and arose from incidents in 2014 and 2016-17 where Plaintiff was denied a filling for his tooth. Count 4, for deliberate indifference to Plaintiff's intestinal symptoms, arose from completely separate transactions/occurrences in 2015 and 2016, involving a different set of Defendants (Trost, Ghafther, Jane Doe, Fuentes, and Kirk). The legal and factual questions as to whether the Count 1 Defendants were deliberately indifferent to Plaintiff's dental condition are distinct from the legal and factual questions pertinent to Count 4. Under Rule 20, it would be improper for Count 1 and Count 4 to proceed in the same action.

Consistent with the *George* decision and Federal Rules of Civil Procedure 20 and 21, the Court shall sever Count 4, and shall open a new case with a newly-assigned case number for that claim. Plaintiff shall be assessed an additional filing fee for the new severed case.

## Disposition

The Clerk is **DIRECTED** to add as a Defendant the **WARDEN of MENARD CORRECTIONAL CENTER (official capacity only)**, for the purpose of implementing any injunctive relief that may be ordered.

The Clerk is further **DIRECTED** to docket a motion for injunctive relief, to reflect that the Complaint contains a request for an order requiring Defendants to provide Plaintiff with necessary dental treatment. (*See* Doc. 1, p. 28-29).

**COUNTS 2, 3, 5, and 6** are **DISMISSED** without prejudice as duplicative and/or for failure to state a claim upon which relief may be granted.

Defendants **WEXFORD, BUTLER,** and **LASHBROOK** are **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure

18

20(a)(2), Plaintiff's medical deliberate indifference claims in **COUNT 4** are severed into a new case. That new case will be: Claims against **TROST, GHAFTHER, NURSE JANE DOE, FUENTES, KIRK,** and the **WARDEN of MENARD CORRECTIONAL CENTER** (official capacity only).

In the new case, the Clerk is **DIRECTED** to file the following documents:

(1)    This Memorandum and Order
(2)    The Original Complaint (Doc. 1)
(3)    Plaintiff's motion to proceed *in forma pauperis* (Doc. 2)

In addition, the Clerk is **DIRECTED** to docket a motion for injunctive relief in the newly severed case, to reflect that the Complaint contains a request for an order requiring Defendants to provide Plaintiff with necessary medical treatment for his intestinal condition. (*See* Doc. 1, p. 28-29).

Plaintiff **will be responsible for an additional $350.00 filing fee** in the new case.

Because this Memorandum and Order contains the §1915A merits review of the severed Count 4, referral may be made to the magistrate judge and service may be ordered on Defendants Trost, Ghafther, Fuentes, and Kirk in the second severed case, as soon as the new case is opened and the judge assignment is made. No service shall be ordered on the Jane Doe Nurse until such time as Plaintiff identifies her by name and files a motion in the severed case, to substitute the newly identified Defendant in place of the generic designation in the case caption and throughout the Complaint. Plaintiff is **ADVISED** that it is his responsibility to provide the name and service address for this individual.

**IT IS FURTHER ORDERED** that the ***only claim remaining in this action is COUNT 1 against Defendants NEWBOLD, KAJA, and the WARDEN of MENARD CORRECTIONAL CENTER (Official Capacity)***, for denial of dental treatment. This case shall now be captioned

19

as: **MARLON L. WATFORD, Plaintiff, vs. STEVEN NEWBOLD, DR. KAJA, and WARDEN of MENARD CORRECTIONAL CENTER (official capacity only), Defendants.**

 **IT IS FURTHER ORDERED** that Defendants **TROST, GHAFTHER, JANE DOE, FUENTES, and KIRK** are **TERMINATED** from *this* action with prejudice.

 As to **COUNT 1**, which remains in the instant case, the Clerk of Court shall prepare for Defendants **NEWBOLD, KAJA,** and **WARDEN of MENARD CORRECTIONAL CENTER (official capacity only)**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

 With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

 Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

 Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States**

**Magistrate Judge Stephen C. Williams** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

      **IT IS SO ORDERED.**

      **DATED: January 4, 2018**

                                    s/ MICHAEL J. REAGAN
                                    Chief Judge
                                    United States District Court